IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE
COMPANY,

      Plaintiff,

v.              Case No. 14-2204-JTM

SOLARIS POWER SERVICES, LLC,
et al.,

      Defendants.

MEMORANDUM AND ORDER

  This case comes before the court on two motions to dismiss. Defendants Anita and Kevin Johnson filed the first (Dkt. 24); defendant Glen Simons filed the second (Dkt. 27). The defendants all assert that this court has no personal jurisdiction over them.

**I. Factual Background**

  Kevin and Anita Johnson filed a lawsuit against Solaris Power Services, LLC and Glen Simons in the circuit court of Jackson County, Missouri on November 5, 2013. As alleged in the underlying lawsuit, Kevin Johnson was hired to perform electrical work at a General Motors facility in Kansas City, Kansas. Simons was an agent or employee of Solaris, an electrical contractor hired to perform work at the same GM facility. According to the underlying claim, Solaris and Simons negligently failed to de-energize a piece of equipment Johnson was working on at the facility, causing him injury. Anita Johnson claims loss of consortium against Solaris and Simons. The Johnsons and

Simons are residents of Missouri, and Solaris is a Michigan corporation. The Johnsons, Simons and Solaris are all defendants in the present case.

Cincinnati Specialty Underwriters Insurance Company (CSU), an Ohio corporation and the plaintiff in the present case, issued two insurance policies to Solaris before the events in the underlying lawsuit occurred. Relying on these policies, Solaris and Simons requested that CSU defend and indemnify them against the Johnsons' allegations. CSU is currently defending Solaris and Simons in the underlying lawsuit pursuant to a reservation of rights under the CSU policies and under applicable law. CSU brought this lawsuit seeking a declaratory judgment stating that the policies it issued do not provide coverage, including a defense or indemnification, to Simons or Solaris for the liability asserted against them in the underlying lawsuit.

The Johnsons and Simons filed separate motions arguing that this court lacks personal jurisdiction over them in this case.

## II. Legal Standard – Motion to Dismiss for Lack of Personal Jurisdiction

"The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well established: The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Edison Trust Number One v. Patillo,* No. 10-1159-RDR, 2010 WL 5093831, at *1 (D. Kan. Dec. 8, 2010) (internal quotations omitted). The extent of the burden depends on the stage at which the court considers the jurisdictional issue. *Id.* The trial court can proceed in several ways including: (1) reference to only the complaint and affidavits, (2) a pre-trial evidentiary hearing, or (3) waiting until trial itself. *Id.*

When personal jurisdiction "is decided at a preliminary stage by reference to only the complaint and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* "The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.' " *Id.* (quoting *TH Agric. & Nutrition, L.L.C. v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). If the plaintiff meets the burden, the defendant must "present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.' " *Thermal Components Co. v. Griffith,* 98 F.Supp.2d 1224, 1227 (D. Kan. 2000) (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985))). "If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and 'the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.' " *Wenz v. Memery Crystal,* 55 F.3d 1503, 1505 (10th Cir. 1995) (internal citations omitted).

**III. Analysis**

In its complaint, CSU alleges the Johnsons and Simons are all Missouri residents. CSU also alleges that at the time of the underlying lawsuit, Glen Simons was conducting business within the State of Kansas as an employee of Solaris and is alleged to have committed tortious acts in the State. Additionally, CSU alleges that Kevin Johnson was conducting business within the State of Kansas and sustained personal injuries in the State. The court must determine whether exercising personal jurisdiction over the defendants under these facts is appropriate.

3

The court starts its analysis with the Kansas long-arm statute, which provides, in pertinent part, for personal jurisdiction over nonresidents who transact "any business," or commit "a tortious act" in the State. KAN. STAT. ANN. § 60-308(b)(1)(A)–(B). When any person commits any act qualifying under these definitions, the courts of Kansas may exercise jurisdiction over "any claim for relief arising from the act . . . ." KAN. STAT. ANN. § 60-308(b)(1). Under the long-arm statute, the court must resolve two questions: (1) did the defendants transact any business or commit a tortious act within the state; and (2) does the cause of action that is the basis of the suit arise from the performance of any of those activities? *See Nat'l Bank of America at Salina v. Calhoun*, 253 F.Supp. 346, 349 (D. Kan. 1966). For the court to exercise personal jurisdiction, both questions must be answered affirmatively.

The defendants would have the court answer the first question "no." They argue that Johnson and Simons were working in Kansas as agents and employees of their respective employers. Citing *Wilshire Oil Co. of Tex. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969), the defendants argue that the Kansas long-arm statute does not extend to them under these circumstances. In *Wilshire Oil Co.*, the U.S. Court of Appeals for the Tenth Circuit ruled that two individuals conducting activities in Kansas in their capacity as agents and employees of their corporate principal were not individually transacting business in the State under the Kansas long-arm statute. 409 F.2d at 1280–83.

Rather than disputing the defendants' arguments that they were merely acting in their capacities as agents and employees, CSU disagrees with the defendants' interpretation of *Wilshire Oil Co.* Specifically, CSU argues that the agent/employee issue

4

was not the actual reason why the Tenth Circuit found minimum contacts were lacking in *Wilshire Oil Co.* Rather, CSU argues that the court found the contacts asserted by plaintiffs unrelated to the conduct from which their claims arose. However, in *Morris by Rector v. Peterson*, 759 F.2d 809, 812–13 (10th Cir. 1985), the court explained its holding in *Wilshire Oil Co.*: "In *Wilshire* we ordered a complaint dismissed because the Kansas long-arm statute did not cover the employees when they engaged in activities as agents of the corporation." CSU's interpretation of *Wilshire Oil Co.* is, thus, unconvincing.

The Johnsons and Simons are Missouri residents. Their only alleged connections to Kansas are the events that occurred at the GM plant that are the basis of the underlying lawsuit. According to CSU's complaint, defendant Simons was acting as an employee of Solaris at the time of these events. Defendant Kevin Johnson has provided an affidavit stating that he was working in Kansas as an employee and under the direction of Capital Electric Construction Co. when his injury occurred.

Under the rule from *Wilshire Oil Co.*, CSU fails to plead facts establishing that the Johnsons and Simons transacted business or committed a tortious act in Kansas. As a result, these defendants are beyond the reach of the long-arm statute and the court may not exercise personal jurisdiction over them.

IT IS THEREFORE ORDERED this 11th day of September, 2014, that the Johnsons' Motion to Dismiss (Dkt. 24) is granted.

IT IS ALSO ORDERED that Simons's Motion to Dismiss (Dkt. 27) is granted.

s/ J. Thomas Marten
J. THOMAS MARTEN, CHIEF JUDGE